No. 16-1492

## In the United States Court of Appeals
## for the Tenth Circuit

M.A.K. INVESTMENT GROUP, LLC, a Colorado limited liability company,
*Plaintiff- Appellant*,

*v.*

CITY OF GLENDALE, a political subdivision of the State of Colorado; GLENDALE
URBAN RENEWAL AUTHORITY, a Colorado urban renewal authority,
*Defendants- Appellees*.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO (JACKSON, J.)
CASE NO. 15-CV-02353

**OPENING BRIEF**

**ORAL ARGUMENT REQUESTED**

| | |
|---|---|
| Timothy G. Atkinson | R. Alexander Pilmer |
| Russell W. Kemp | Michael A. Onufer |
| James R. Silvestro | Lianna Bash |
| IRELAND STAPLETON PRYOR & PASCOE, P.C. | KIRKLAND & ELLIS LLP |
| 717 Seventeenth Street, Suite 2800 | 333 South Hope Street |
| Denver, Colorado 80202 | Los Angeles, California 90071 |
| (303) 623-2700 | (213) 680-8400 |

*Counsel for M.A.K. Investment Group, LLC*

February 13, 2017

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................1

STATEMENT OF RELATED CASES ...............................................................2

JURISDICTIONAL STATEMENT ....................................................................3

STATEMENT OF THE ISSUES.........................................................................4

STATEMENT OF THE FACTS AND CASE ....................................................5

I.      STATEMENT OF THE FACTS ..............................................................5

        A.      The Colorado Urban Renewal Law...............................................5

        B.      Facts Surrounding MAK's Property .............................................6

II.     STATEMENT OF THE CASE .................................................................8

SUMMARY OF THE ARGUMENT ..................................................................9

ARGUMENT ....................................................................................................10

I.      STANDARD OF REVIEW ...................................................................10

II.     THE DISTRICT COURT ERRED IN DISMISSING MAK'S CLAIM
        THAT THE CITY INFRINGED ON ITS PROCEDURAL DUE
        PROCESS RIGHTS TO CHALLENGE THE BLIGHT
        DETERMINATION. ...............................................................................11

        A.      Due Process Attaches Where A State Grants The Right To
                Bring A Judicial Proceeding. ......................................................12

        B.      The Second Circuit's Decision In *Brody* Is Persuasive
                Here. .............................................................................................16

                1.      *Brody* Correctly Explained That Due Process Requires
                        Notice to Impacted Property Holders...............................16

                2.      Following *Brody* Would Not Result In An Over-Reaching
                        Application Of Due Process...............................................18

        C.      Alternatively, The Underlying Blight Designation Is
                Adjudicative, Not Legislative. .....................................................20

III.  GLENDALE OFFERED NO CONVINCING ARGUMENT AS TO
      WHY MAK'S DUE PROCESS CLAIM SHOULD HAVE BEEN
      DISMISSED. .......................................................................................22

      A.    MAK Has A Protected Property Interest At Stake. ...........................22

            1.  MAK Has A Protected Interest In Its Real Property. ...................23

            2.  MAK Has An Interest In Its Right To Challenge The Blight
                Determination. ...............................................................................24

      B.    The Statutory Thirty-Day Window Is Exclusive And
            MAK Will Not Have Another Opportunity To Challenge
            The Blight Determination. ..................................................................25

      C.    MAK's Due Process Claim Is Ripe. ...................................................27

CONCLUSION ...........................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Albers v. Bd. of Cnty. Comm'rs of Jefferson Cty.*,
  771 F.3d 697 (10th Cir. 2014) ............................................................11

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*,
  239 U.S. 441 (1915)..............................................................................14, 19

*Boddie v. Conn.*,
  401 U.S. 371 (1971)..............................................................................15, 18

*Brody v. Vill. of Port Chester*,
  434 F.3d 121 (2d Cir. 2005) .............................................................*passim*

*Christy Sports, LLC v. Deer Valley Resort Co.*,
  555 F.3d 1188 (10th Cir. 2009) ........................................................10

*City of Cincinnati v. Vester*,
  281 U.S. 439 (1930)..............................................................................15

*Conn. v. Doehr*,
  501 U.S. 1 (1991)..................................................................................23

*Deck v. Engineered Laminates*,
  349 F.3d 1253 (10th Cir. 2003) ........................................................25

*G & A Land, LLC v. City of Brighton*,
  233 P.3d 701 (Colo. App. 2010)........................................................27

*Logan v. Zimmerman Brush Co.*,
  455 U.S. 422 (1982)..............................................................................*passim*

*M.T. v. People*,
  269 P.3d 1219 (Colo. 2012)................................................................26

*Moffett v. Halliburton Energy Servs., Inc.*,
  291 F.3d 1227 (10th Cir. 2002) ........................................................22

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)..............................................................................9, 17

*N.Y. State Nat'l Org. for Women v. Pataki*,
   261 F.3d 156 (2d Cir. 2001) ................................................................24

*Pater v. City of Casper*,
   646 F.3d 1290 (10th Cir. 2011) .........................................................23

*Phillips v. Wash. Legal Found.*,
   524 U.S. 156 (1998)............................................................................23

*R.R. Vill. Ass'n, Inc. v. Denver Sewer Corp.*,
   826 F.2d 1197 (2d Cir. 1987) ............................................12, 13, 21

*Salt Creek, L.P. v. City of Warr Acres*,
   No. 01-1500-F, 2002 WL 32026152 (W.D. Okla. June 13, 2002).....................24

*Schanzenbach v. Town of La Barge*,
   706 F.3d 1277 (10th Cir. 2013) .........................................................28

*Schroeder v. City of N.Y.*,
   371 U.S. 208 (1962)............................................................................15

*Warden v. City of Grove*,
   604 Fed. App'x 755 (10th Cir. 2015) ................................................27

**Constitutional Authorities, Statutes, and Rules**

C.R.S. § 31-25-105.5 .........................................................................*passim*

C.R.S. § 31-25-107 .........................................................................5, 16, 20

C.R.S. § 38-1-101 ................................................................................25

28 U.S.C. § 1291 ...................................................................................3

28 U.S.C. § 1331 ...................................................................................3

28 U.S.C. § 2107 ...................................................................................3

42 U.S.C. § 1983................................................................................3, 18

N.Y. Em. Dom. Proc. Law § 202.........................................................17

N.Y. Em. Dom. Proc. Law § 204.........................................................26

N.Y. Em. Dom. Proc. Law § 207.........................................................26

Fed. R. App. P. 4 ..................................................................................................... 3

Rule 12 ................................................................................................................... 10

U.S. Const. Amend. XIV ......................................................................................... 9

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Counsel for Appellant M.A.K. Investment Group, LLC certifies there is no parent corporation or publicly held corporation to disclose under Rule 26.1(a).

**STATEMENT OF RELATED CASES**

No related appeals are currently pending in this or any other appellate court, and no appeal has previously been taken in this case.

## JURISDICTIONAL STATEMENT

M.A.K. Investment Group, LLC ("MAK") brought this case under 42 U.S.C. § 1983. The United States District Court for the District of Colorado (Jackson, J.) had jurisdiction pursuant to 28 U.S.C. §1331. That court entered final judgment on November 21, 2016. Appx. 39-59 (Dkts. 54-55). MAK timely filed its notice of appeal on December 20, 2016. Appx. 60 (notice of appeal); *see also* 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(4)(A). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

When a governing body grants the right to a judicial proceeding, the Constitution requires that judicial proceeding to comport with due process. The City of Glendale determined that M.A.K. Investment Group, LLC's property was blighted (and thus subject to taking), but the City did not notify MAK of its blight determination, and did not notify MAK that MAK could only seek judicial review of that determination within 30 days. Did the district court err in ruling that MAK's right to seek judicial review of the City's blight determination was not subject to the Constitution's due process requirement?

**STATEMENT OF THE FACTS AND CASE**

## I.      STATEMENT OF THE FACTS

### A.      The Colorado Urban Renewal Law

The Colorado Urban Renewal Law, C.R.S. § 31-25-101, *et seq.*, governs eminent domain proceedings regarding urban renewal projects.  The statute requires that a local governing body must provide notice to a property owner that an Urban Renewal Authority is "commencing a study necessary for making a determination as to whether the area in which the owner owns property is a slum or a blighted area." C.R.S. § 31-25-107(1)(b).  This law, however, neither requires nor authorizes a governing body to provide a property owner with notice of a determination that a property is blighted, and thus subject to condemnation.  By contrast, a governing body must provide a property owner with notice within thirty days "[w]here the authority makes a determination that the area is not a slum, blighted area, or a combination thereof."  *Id.*

In cases where the governing body finds blight, "[a]ny owner of property located within the urban renewal area may challenge the determination of blight made by the governing body . . . by filing, not later than thirty days after the date the determination of blight is made, a civil action in district court for the county in which the property is located . . . for judicial review of the exercise of discretion on the part of the governing body in making the determination of blight."  *Id.* § 31-25-

5

105.5(2)(b).  Just as the statute neither requires nor authorizes the governing body to notify landowners of a blight determination, it neither requires nor authorizes the governing body to notify landowners of the 30-day window to seek judicial review.

After making a blight determination, the governing body then has up to seven years to commence a condemnation proceeding to take that property.  *Id.* § 31-25-105.5(2)(a)(I).  At no time during those seven years is the governing body required to notify property owners that their property has been deemed blighted. Indeed, the governing body is neither required nor authorized to give property owners any notice whatsoever unless and until the governing body launches eminent domain proceedings to take the property.  *Id.* § 31-25-105.5(2)(a).

### B.     Facts Surrounding MAK's Property

Plaintiff M.A.K. Investment Group, LLC ("MAK") is a Colorado limited liability company that owns several contiguous parcels of real property in the City of Glendale, Colorado.  Appx. 11-12, 23 (Compl. ¶ 5 & Ex. 1).  Several years after purchasing the property, MAK began working with the City to redevelop the area in which these parcels are located.  Appx. 15 (Compl. ¶ 19).  In early 2013, the City of Glendale and the Glendale Urban Renewal Authority (collectively, "Glendale") initiated a process to declare the property blighted under the Colorado Urban Renewal Law.  Appx. 14 (Compl. ¶ 16).  In April 2013, MAK received notice that Glendale was "commencing a study necessary for making a

6

determination as to whether the area in which the owner owns property is a slum or a blighted area."   Appx. 14, 24-25 (Compl. ¶ 17 & Ex. 2).   The notice also informed MAK that, on May 7, 2013, Glendale was holding a hearing to approve the Riverwalk Urban Renewal Plan.  Appx. 14, 24-25 (Compl. ¶ 16 & Ex. 2).  This notice did not inform MAK that if, at that hearing, the City Council determined MAK's property was blighted, that Glendale could then use eminent domain to take the property; nor did the City inform MAK of its limited thirty-day opportunity to challenge any such determination.  Appx. 14-15, 24-25 (Compl. 18 & Ex. 2).

After receiving this notice, one of MAK's principals met with a representative of Glendale and asked him about the meaning of "blight" and whether MAK should take any action in response to the notice.   Appx. 15-16 (Compl. ¶ 21).   The representative stated that MAK's principal "did not need to worry about the notice."  *Id.*  Because the principal had previously worked with the Glendale official, and trusted the official's advice, no representative of MAK attended the hearing.  Appx. 15-16 (Compl. ¶¶ 19-23).

At the May 7, 2013 hearing, the Glendale City Council found that MAK's property was blighted and adopted a resolution declaring the same.  Appx. 17-18, 26-30 (Compl. ¶ 29 & Ex. 3).  Glendale did not notify MAK of this determination, nor did it notify MAK of the limited thirty-day window in which MAK could

challenge the determination.  Appx. 17-18 (Compl. ¶¶ 29-30).  Because MAK was not given notice, MAK did not challenge the blight determination within the statutory thirty-day period.  Appx. 18-19 (Compl. ¶ 32).  Indeed, MAK did not learn of the significant consequences of a  blight determination until, at the earliest, November 2013 when it engaged a real estate attorney to assist in MAK's private redevelopment of its property.  Appx. 19 (Compl. ¶ 35).

## II.    STATEMENT OF THE CASE

On October 23, 2015, MAK brought suit in the District of Colorado alleging Glendale violated the Fourteenth Amendment's guarantees of due process and equal protection.  Appx. 10-13 (Compl. ¶¶ 1, 10-12).  MAK specifically claimed that the Colorado Urban Renewal Law violates due process both on its face and as applied to MAK.  Appx. 20 (Compl. ¶¶ 37-38).

The City moved to dismiss MAK's Complaint on several grounds. *See M.A.K. Investment Grp., LLC v. City of Glendale*, No 1:15-cv-02353, Dkt. 13, at 5-11, 13. The district court ruled on only one of these grounds and dismissed MAK's complaint because "MAK had no due process rights in the blight determination because it was a legislative action."  Appx. 43 (Order at 5).[1]  In reaching this decision, the district court disregarded the Second Circuit's decision in *Brody v. Vill. of Port Chester*, 434 F.3d 121, 130 (2d Cir. 2005).  Appx. 49-53 (Order at 11-

---

[1]    The district court also dismissed MAK's equal protection claim for failure to state a claim, an order which MAK does not challenge in the instant appeal. *Id.*

15).  Although on point, the district court found *Brody* unpersuasive and declined to adopt its reasoning.  Appx. 53 (Order at 15).

On November 21, 2016, the district court entered final judgment dismissing MAK's complaint with prejudice, (Appx. 58 (Final Judgment)), and MAK timely brought this appeal. Appx. 60 (Notice of Appeal).

## SUMMARY OF THE ARGUMENT

The Due Process Clause of the Fourteenth Amendment requires that "[n]o [s]tate shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV.  This guarantee requires, at a minimum, notice and an opportunity to be heard.  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).  Moreover, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id.* at 314.

The district court erroneously dismissed MAK's due process claim.   In concluding that MAK could not state a cognizable due process claim, the district court focused on the nature of the blight determination underlying MAK's claim, rather than the right which MAK alleges the City infringed:  MAK's inability to challenge the blight determination in the statutorily guaranteed proceeding, *see* C.R.S. § 31-25-105.5(2)(b), because it did not receive proper notice.  To the extent

a state grants a right to a judicial proceeding, that proceeding must comport with due process. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432-33 (1982).

The district court also erroneously disregarded the Second Circuit's persuasive decision in *Brody*. There, when confronted with a set of facts strikingly similar to those at issue here, the Second Circuit concluded the appellant, Brody, had been deprived of due process because the governing body in that case had taken an initial step towards condemnation without providing Brody proper notice of the decision or of the fact that he could challenge that determination only within a limited thirty-day period. Although not binding on this Court, this Court should adopt *Brody*'s persuasive reasoning.

Finally, in its motion to dismiss, Glendale asserted MAK's complaint should also be dismissed because (1) MAK has not been deprived of a protected property interest, (2) the Colorado Urban Renewal Law provides all process that is due under the Fourteenth Amendment, and (3) MAK's due process claim is not ripe. *See MAK*, No 1:15-cv-02353, Dkt. 13. Although not addressed by the district court, none of these arguments support dismissal of the Complaint.

## ARGUMENT

## I.      STANDARD OF REVIEW

This Court "review[s] the grant of a Rule 12(b)(6) motion to dismiss de novo." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th

Cir. 2009).  In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014).  A motion to dismiss must be denied if the complaint provides "facts sufficient to state a claim to relief that is plausible on its face."  *Id.*

## II.  THE DISTRICT COURT ERRED IN DISMISSING MAK'S CLAIM THAT THE CITY INFRINGED ON ITS PROCEDURAL DUE PROCESS RIGHTS TO CHALLENGE THE BLIGHT DETERMINATION.

MAK seeks redress for the harm it suffered on account of not being provided notice of either the blight determination or its right to challenge that determination within thirty days; MAK's complaint does not challenge the City's blight determination itself.  This lack of notice prevented MAK from exercising its right to bring a *judicial proceeding* challenging the determination.  And such a judicial proceeding is adjudicative and subject to due process requirements.  The district court therefore erred in concluding the allegedly legislative nature of the blight determination forecloses MAK's ability to bring a due process challenge regarding its right to seek judicial recourse.

MAK's position is supported by the Second Circuit's decision in *Brody v. Village of Port Chester*.  When faced with facts substantially similar to those here, the Second Circuit rejected the same legislative-determination argument the City makes, and the District Court accepted.  *Brody*, 434 F.3d at 128-29.  Instead, the

Second Circuit held that the appellant *did* have a cognizable due process claim because his challenge related not to the underlying blight determination, but to the lack of due process surrounding his statutory right to challenge that determination in a court of law. *Id*.

In dismissing MAK's complaint, the district court erroneously focused on the question of whether the City's blight determination was a legislative decision that would not give rise to due process protections. Appx. at 5-9; *see also R.R. Vill. Ass'n, Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1204 (2d Cir. 1987) (noting "no notice or opportunity to be heard would have been required if the act [in question] had been legislative"); *Brody*, 434 F.3d at 128 ("[W]e agree that due process rights do not attach to legislative actions.").

By incorrectly focusing on the nature of the underlying blight determination, rather than on MAK's true challenge, the district court reached the wrong result. Under longstanding due process precedent, and the *Brody* court's reasoning, this Court should reverse the district court's dismissal of MAK's due process claim.

### A. Due Process Attaches Where A State Grants The Right To Bring A Judicial Proceeding.

The district court held that the Glendale's determination that MAK's property was blighted was "a legislative act." Appx. 45 (Order at 7). Because a "legislative determination provides all the process that is due," (Appx. 44 (Order at 6)), the Court concluded MAK had no right to bring its due process challenge. But

MAK does not challenge the Glendale City Council's process in reaching its blight determination. The due process violation here arises from the "lack of meaningful notice of the consequences of the public hearings, of personal notice of the determination and findings, of the time-sensitive right to bring a challenge to the blight determination, and of the consequences of failing to petition for review." Appx. 19 (Compl. ¶ 33).

Focusing on the crux of MAK's argument—the fact that it was not provided notice of the blight determination itself nor of the thirty-day window in which it could challenge that notice—demonstrates that MAK's challenge is to an adjudicative proceeding, not a legislative one. MAK's challenge centers on its inability to exercise its statutory right to challenge the blight decision. *See* C.R.S. § 31-25-105.5(2)(b) ("Any owner of property located within the urban renewal area may challenge the determination of blight made by the governing body . . . by filing, not later than thirty days after the date the determination of blight is made, a civil action in district court for the county in which the property is located."). This proceeding guaranteed by the Colorado Urban Renewal Law is quintessentially adjudicative; the statute provides an affected landowner with the opportunity to bring "a civil action in district court." *Id.* Such a classic adjudicative proceeding must comport with due process. *See R.R. Vill. Ass'n, Inc.*, 826 F.2d at 1204-05.

The allegedly legislative nature of the underlying blight determination is irrelevant.  As explained above, MAK's challenge focuses on its inability to bring its statutorily guaranteed challenge to the blight determination.  Much of the district court's opinion was based on the Supreme Court's opinion in *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441 (1915).  Appx. 43-44 (Order 5-6).  In *Bi-Metallic*, the Supreme Court held that due process did not require a hearing before a governing body increased its property tax valuations.  239 U.S. at 443-45.  But *Bi-Metallic* did not involve the question of what process would apply were that governing body to grant a mechanism for challenging those valuations in a court of law.  *See id.*

Other Supreme Court precedent confirms that where, as here, a governing body grants citizens the right to bring a judicial proceeding, that proceeding must comport with due process.  *See Logan*, 455 U.S. at 430-31.  In *Logan*, the Supreme Court considered whether due process attached to an individual's ability to bring an anti-discrimination claim, as defined by Illinois state statute.  *Id.* at 425.  There, the state commission established to hear Logan's anti-discrimination claim failed to initiate an investigatory proceeding within the timeframe specified by statute and therefore dismissed Logan's claim in its entirety.  *Id.* at 426-27.  Logan filed suit claiming this dismissal violated her due process rights.  *Id.*  The *Logan* Court held not only that due process applied to complaints of this nature, but that the

commission's failure to adjudicate Logan's claim violated due process. *Id.* at 433, 437. Acknowledging that the legislature had adopted the statutory timeframe, the Court nevertheless concluded due process applied because the provision at issue "limit[ed] … the claimant's ability to assert his rights." *Id.* at 432-33. So too here, the Colorado Urban Renewal Law's failure to provide notice effectively eliminates landowners' ability to bring the legal proceeding guaranteed by C.R.S. § 31-25-105.5(2)(b).

Under *Logan*, MAK's claim that it was afforded neither notice of the blight determination nor of its right to challenge that determination falls squarely within those claims protected by the Due Process Clause. *See Logan*, 455 U.S. at 432-33; *Boddie v. Conn.*, 401 U.S. 371, 377 (1971) ("[D]ue process requires, at a minimum, that . . . persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard."); *see also, e.g.*, *Schroeder v. City of N.Y.*, 371 U.S. 208, 211 (1962) (requiring condemnation proceedings to comport with due process); *City of Cincinnati v. Vester*, 281 U.S. 439, 446 (1930) (noting that although courts reviewing public use determinations "consider[] with great respect legislative declarations . . . as to the uses considered to be public in the light of local exigencies," "the question [of public use] remains a judicial one").

**B.    The Second Circuit's Decision In *Brody* Is Persuasive Here.**

1.    *Brody* Correctly Explained That Due Process Requires Notice to Impacted Property Holders.

The Court in *Brody* addressed the issue MAK raises.  In *Brody*, the plaintiff challenged the Village of Port Chester's ("the Village") determination that a redevelopment project, which included Brody's property, was for a "public use" and was therefore appropriate for eminent domain.  *Brody*, 434 F.3d at 124-25. This public use determination is analogous to the blight determination here: it is a preliminary determination authorizing the eventual use of condemnation.  *See id.*; C.R.S. §§ 31-25-105.5, 31-25-107.  And like the Colorado statute here, the New York Eminent Domain Procedure Law in *Brody* provided only a thirty-day window to challenge a public use determination.  *See id.*[2]  Brody challenged New York's law, claiming, among other things, that the Village's failure to provide him with personal notice of the determination[3] and notice of the thirty-day window in which

---

[2]    In its motion to dismiss, Glendale argued that the New York statute in *Brody* is distinguishable from Colorado's statute.  *MAK*, No 1:15-cv-02353, Dkt. 13, at 9. Glendale asserted that under the New York statute, the thirty-day window is the exclusive period to challenge the public use determination, whereas here, Glendale erroneously argued that impacted property owners can challenge the blight determination during condemnation proceedings.  *Id.*  As explained more fully in Section III.B, *infra*, the Colorado Urban Renewal Law's thirty-day period is likewise the exclusive time in which impacted property owners may challenge a blight determination.  *See* C.R.S. § 31-25-105.5(2)(b).

[3]    Notably, the statute at issue in *Brody* required governing bodies to provide publication-notice of public use determinations, and therefore actually provided for *more* notice than is required under the Colorado Urban Renewal Law (which

he could bring a challenge violated due process. *Brody*, 434 F.3d at 126. The district court in *Brody* granted the Village's motion for summary judgment, finding that Brody had been provided with sufficient notice. *Id*

On appeal, the Village raised the same argument adopted by the district court here: that due process did not attach to the public use determination because it was a legislative decision. *Id.* at 128. In rejecting that argument, the Second Circuit explained that "the issue here is whether [due process] rights attach to a judicial proceeding established to allow aggrieved persons to assert a constitutionally prescribed limitation on a legislative action." *Id*. Further, "[t]o say that no right to notice or a hearing attaches to the public use requirement would be to render meaningless the court's role as an arbiter of a constitutional limitation on the sovereign's power to seize private property." *Id*. at 129. The Second Circuit concluded that "where, as here, a condemnor provides an exclusive procedure for challenging a public use determination, it must also provide notice in accordance with the rule established by *Mullane* and its progeny." *Id.*

The district court here rejected *Brody*. Appx. 49 (Order at 11). But, as explained above, the district court failed to recognize the long-established rule that, to the extent a state grants a right to a judicial proceeding, that proceeding must

---

requires no notice). *See Brody*, 434 F.3d at 124 (citing N.Y. Em. Dom. Proc. Law § 202(A)); C.R.S. §§ 31-25-105.5; 31-25-107.

comport with due process, which requires notice and an opportunity to be heard. *See Logan*, 455 U.S. at 432-33; *Boddie*, 401 U.S. at 377.

Under established due process law and the reasoning articulated in *Brody*, MAK's due process claim should not have been dismissed.

        2.      Following *Brody* Would Not Result In An Over-Reaching Application Of Due Process.

In rejecting the reasoning set forth in *Brody*, the district court hypothesized that the Second Circuit's ruling would lead to an unnecessarily broad application of required notice. Appx. 50 (Order at 12). The district court noted, for example, that following *Brody* would require courts to notify "parties of their right to appeal within thirty days of the court's judgment." Appx. 51 (Order at 13). The district court further claimed, for example, that following *Brody* would mean that "if a police officer broke into someone's home to search for drugs without a warrant or exigent circumstances, . . . the officer not only violated the Fourth Amendment but also the Due Process Clause for failing to inform the victim that his actions provided a cause of action against the officer under 42 U.S.C. § 1983 that would be time barred if not filed within the two-year statute of limitations period . . . ." *Id.*

The district court misreads *Brody's* limitations. There, the court recognized that due process attached to the public use determination because there was a limited thirty-day window in which property owners could challenge that determination and because the determination was of the type that regular citizens

18

are not expected to know about. *See Brody*, 434 F.3d at 129-32 ("It is not likely that the average landowner would have appreciated that notice of the Determination and Findings began the exclusive period in which to initiate a challenge to the condemnor's determination.")

This ruling does not, as the district court suggested, expand the limitations of due process beyond a rational limit. Appx. 51 (Order at 13, describing an alternate result as a "dramatic transubstantiation of the Board's legislative action into an adjudicative decisionmaking process."). But *Brody* does not stand for the "dramatic transubstantiation" the district court hypothesized. Nor, as the district court seems to believe, did the *Brody* panel—which included now-Justice Sotomayor—fail to recognize the Supreme Court's prior ruling in *Bi-Metallic. See Brody*, 434 F.3d at 133-34 (citing *Bi-Metallic*). Moreover, the Supreme Court's cursory opinion in *Bi-Metallic* did not address the issue here: whether due process attaches to a statutorily guaranteed right to bring a judicial challenge to an allegedly legislative determination. *See Bi-Metallic*, 239 U.S. at 443-45. *Brody*, following a long line of Supreme Court precedent, held that it does. *See Brody*, 434 F.3d at 128-29.

To support its position, the district court notes that MAK has a process available to it relating "to direct appropriations and total regulatory takings of property" and that therefore MAK could bring a 5th Amendment takings claim in

the future (although the district court noted "MAK should not try to file this challenge in a federal court just yet"). Appx. 53 (Order at 15). This reasoning overlooks the practical and independent effect of a blight determination, and that such a determination is itself a deprivation of a property right. *See infra* Part V.A. Not only does the blight determination create a "cloud of condemnation" upon MAK's property (Appx. 18 (Compl. ¶ 30)), but the deprivation is implicitly recognized by the state of Colorado, which granted a right to a judicial proceeding in C.R.S. §31-25-107(3)(b). Indeed, as the district court recognized, the blight determination enables Glendale to initiate eminent domain proceedings, which creates a state of uncertainty for property owners lasting up to seven years. *See* C.R.S. § 31-25-105.5(2)(a)(I) ("[T]he urban renewal project for which the property is being acquired shall be commenced no later than seven years from the date the blight determination is made.").

\*       \*       \*

The district court offered no persuasive reason to disregard the Second Circuit's opinion in *Brody*. The *Brody* court correctly held that due process attaches to judicial proceedings; this Court should follow its persuasive reasoning.

### C.    Alternatively, The Underlying Blight Designation Is Adjudicative, Not Legislative.

In the alternative, MAK argued to the district court that the underlying blight determination was adjudicative in nature, and thus required the application of due

process separate and apart for the due process that attaches to the statutorily prescribed judicial process thereafter. The blight determination involved the consideration of individualized factors regarding a small group of properties, and was therefore an adjudicative decision. *See R.R. Vill. Ass'n, Inc*, 826 F.2d at 1205 (noting an "[a]ction is adjudicative when a decision is based on a determination of facts about the parties and their activities, businesses, and properties" and finding a town board hearing setting sewage disposal rates was adjudicative (internal quotations omitted)). The district court, however, applied general law regarding the nature of determinations of this type and concluded that the blight determination was legislative. Appx. 45-46 (Order 7-8).

But the district court did not consider the unique facts of *this* case, as alleged in the Complaint. For example, the district court noted that this determination involved "26 landowners" but overlooked that MAK is the largest landowner in the project, with the remaining landowners being small parcel owners and the City of Glendale itself. Appx. 23 (Compl. Ex. 1). The district court also overlooked facts in the Complaint suggesting that the blight determination was specifically targeted to obtain MAK's property. As noted in the Complaint, Glendale only initiated the urban renewal process after years of unsuccessfully working with MAK to privately redevelop the property. In addition, a Glendale representative deliberately misled MAK into believing the blight determination hearing was

unimportant.  Appx. 15-16 (Compl. ¶¶ 19-22).    At a minimum, the allegations in the Complaint are sufficient to create a factual dispute as to the nature of the underlying proceeding.[4]

## III.  GLENDALE OFFERED NO CONVINCING ARGUMENT AS TO WHY MAK'S DUE PROCESS CLAIM SHOULD HAVE BEEN DISMISSED.

Glendale also argued that MAK's complaint should be dismissed because (according to the City), (1) MAK did not assert a protected property interest, (2) MAK was not deprived of due process because it will have the opportunity to challenge the blight determination in eventual condemnation proceedings, and (3) MAK's due process claim is not ripe.  Although the district court did not consider these arguments, Appx. 43 (Order at 5), MAK briefly addresses each argument here.

### A.    MAK Has A Protected Property Interest At Stake.

Glendale argued that MAK has not been deprived of a protected property interest.  *MAK*, No 1:15-cv-02353, Dkt. 13, at 6.  This is incorrect; MAK has been deprived of two separate property interests: MAK's interest in its real property and MAK's interest in its entitlement to bring a challenge to the blight determination.

---

[4]    Indeed, although it cannot be considered by this Court in the instant appeal, *see Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002) (explaining that in reviewing the grant of a 12(b)(6) motion to dismiss, this Court "look[s] only at the four corners of the complaint"), discovery in this case *did* reveal that the urban renewal process was utilized to target a few select property owners, including MAK.

1.    MAK Has A Protected Interest In Its Real Property.

The Due Process Clause protects interests in real property.  *See Pater v. City of Casper*, 646 F.3d 1290, 1294 (10th Cir. 2011) (explaining "ownership of land or real estate is a quintessential source of property interests;" "title to real estate" is a "property interest").  This interest is not simply in the value of the property, but includes property owners' interest in their ability to use and alienate the property. *See Phillips v. Wash. Legal Found.*, 524 U.S. 156, 170 (1998) (noting the "longstanding recognition that property is more than economic value," and "also consists of the group of rights which the so-called owner exercises in his dominion of the physical thing, such as the right to possess, use and dispose of it" (internal quotations omitted)).

Blight determinations, as a matter of law, deprive impacted landowners of a protected property interest.  As this Court stated in *Pater*, a municipality need not physically take property to deprive the landowner of a property interest.  *Pater*, 646 F.3d at 1294 ("[S]omething less than a complete, physical, or permanent deprivation of real property may be sufficient to trigger due process concerns.").  Indeed, a deprivation of a real property interest occurs even with temporary impairments such as "attachments, liens, and similar encumbrances." *Id.*  A blight determination *directly* attaches to the real property at issue, impacting landowners' ability to use and enjoy their land.  *See Conn. v. Doehr*, 501 U.S. 1, 11-12 (1991)

23

(concluding a deprivation that "clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; [or] reduces the chance of obtaining a home equity loan or additional mortgage" warrants due process protection); *cf. Salt Creek, L.P. v. City of Warr Acres*, No. 01-1500-F, 2002 WL 32026152, at *13 (W.D. Okla. June 13, 2002) ("[I]ncident of plaintiff's ownership of its shopping center is the right not to have the property swept into the redevelopment process on the basis of" an erroneous blight determination).  The blight determination, as a matter of law, impaired MAK's ability to use and enjoy its land, depriving MAK of its constitutionally protected interest in its real property.

> 2.   MAK Has An Interest In Its Right To Challenge The Blight Determination.

In addition to its interest in its real property, MAK also has a protected interest in its entitlement to bring a judicial challenge to the blight determination. *See Logan*, 455 U.S. at 428 ("[A] cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause.").  MAK, like the plaintiff in *Logan*, has a property interest in its right, under the Colorado Urban Renewal Law, to bring a proceeding challenging the blight determination.  *See id.*  As explained above, the Colorado statutory scheme creates a right to bring a judicial proceeding challenging a blight determination.   *See* C.R.S. § 31-25-105.5(2)(b).   MAK therefore has a protected property interest in its ability to bring such a challenge. *See Logan*, 455 U.S. at 428; *N.Y. State Nat'l Org. for Women v. Pataki*, 261 F.3d

156, 164 (2d Cir. 2001) (although plaintiffs did not have a property interest in judicial procedures, they *did* have a constitutionally protected property interest in the "cause of action itself"); *cf. Deck v. Engineered Laminates*, 349 F.3d 1253, 1259 (10th Cir. 2003) (citing *Logan* and noting, in the context of a RICO claim, that plaintiff had a property interest in his ability to bring a cause of action).

### B. The Statutory Thirty-Day Window Is Exclusive And MAK Will Not Have Another Opportunity To Challenge The Blight Determination.

Glendale further argued below that even assuming MAK received defective notice of the hearing and blight determination, this lack of notice did not violate due process because MAK will be given a full opportunity to challenge the blight determination during condemnation proceedings. *MAK*, No 1:15-cv-02353, Dkt. 13, at 9.

This argument misconstrues the statute. In making this argument, Glendale relied on a provision of Colorado's general eminent domain statute specifying that, in a condemnation action involving a taking for the eradication of blight, "the burden of proof is on the condemning entity to demonstrate, by clear and convincing evidence, that the taking of the property is necessary for the eradication of blight." *Id.* at 4 (quoting C.R.S. § 38-1-101(3)(b)). But proof that condemnation is necessary for the eradication of blight is different from a determination that the property is blighted in the first place. Glendale points to

nothing in the statute suggesting that a property owner is free, in an eventual condemnation proceeding, to challenge an underlying determination of blight. Indeed, if that were so, it would render superfluous the Urban Renewal Law's provision specifying that a challenge to a blight determination must be filed "not later than thirty days after the date the determination of blight is made." C.R.S. § 31-25-105.5(2)(b); *see also M.T. v. People*, 269 P.3d 1219, 1222 (Colo. 2012) ("We avoid constructions that render any term superfluous.").

Indeed, Colorado's 30-day window is materially indistinguishable from New York's 30-day window at issue in *Brody*. *Compare* C.R.S. §§ 31-25-105.5(2)(b) ("Any owner of property located within the urban renewal area may challenge the determination of blight . . . by the filing of, not later than thirty days after the date the determination of blight is made, a civil action.") *with* N.Y. Em. Dom. Proc. Law §§ 204, 207 (once governing body makes its determination, affected property owners "can seek judicial review thereof" by "filing a petition in [the appellate division of the supreme] court within thirty days after" publication).

As in *Brody*, the Colorado Urban Renewal Law provides an exclusive thirty-day window in which affected property owners may challenge a blight determination. The existence of this limited timeframe triggers due process, requiring municipalities to provide notice of the determination and the right to challenge. *See Brody*, 434 F.3d at 132 (concluding "reasonable notice" under the

Due Process Clause required "mention of the commencement of the thirty-day challenge period").

### C.  MAK's Due Process Claim Is Ripe.

Glendale also argued that MAK's due process claim was not ripe.  *MAK*, No 1:15-cv-02353, Dkt. 13 at 13.  As with Glendale's other arguments, the assertion that MAK's due process claim is not ripe is unavailing.

A claim is ripe if it contains a live controversy and does not "rest[] upon contingent future events that may not occur as anticipated."  *Warden v. City of Grove*, 604 Fed. App'x 755, 757 (10th Cir. 2015) (internal quotation omitted).  Glendale, construing MAK's due process claim as a takings claim, argued that MAK's claim was not ripe because MAK's property has not yet been condemned.  *MAK*, No 1:15-cv-02353, Dkt. 13 at 13-14.  But this is not the law.  MAK's procedural due process claim is ripe because MAK has already been denied adequate process surrounding that blight determination.  *See Warden*, 604 Fed. App'x at 757; *cf. G & A Land, LLC v. City of Brighton*, 233 P.3d 701, 712 (Colo. App. 2010) (inverse condemnation claim alleging damages sustained after a property was declared blighted, but before it was formally condemned, is ripe under Colorado law).  Because MAK's injuries stem from Glendale's denial of adequate notice and of the blight determination, MAK's due process claim "does not depend on whether [the blight determination] constituted a compensable

taking." *Schanzenbach v. Town of La Barge*, 706 F.3d 1277, 1283 (10th Cir. 2013) (concluding a procedural due process claim was not coextensive with a takings claim because it challenged the adequacy of process surrounding a permit revocation, not the correctness of a compensable taking).  MAK's due process claim is therefore ripe.

## CONCLUSION

For the foregoing reasons, MAK respectfully requests that this Court reverse the district court's dismissal of its complaint.

Dated:   February 13, 2017

*s/ Timothy G. Atkinson*
Timothy G. Atkinson
Russell W. Kemp
James R. Silvestro
IRELAND STAPLETON PRYOR &
PASCOE, P.C.
717 Seventeenth Street, Suite 2800
Denver, Colorado 80202
Telephone:  (303) 623-2700

R. Alexander Pilmer
Michael A. Onufer
Lianna Bash
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone:  (213) 680-8400

*Counsel for M.A.K. Investment*
*Group, LLC*

## STATEMENT REGARDING ORAL ARGUMENT

MAK respectfully requests oral argument.  This case presents important issues regarding the interpretation of the Due Process Clause of the Fourteenth Amendment.  MAK believes that argument will materially assist the Court in its analysis of the disputed issues presented on appeal.

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

1.     Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B), the brief contains 5,843 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(a)(7)(B), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


Dated:  February 13, 2017                        *s/ Timothy G. Atkinson*
                                                                    Timothy G. Atkinson

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

Pursuant to The United States Court of Appeals for the Tenth Circuit CM/ECF User's Manual II(I)(b), I hereby certify that the foregoing document, as submitted in digital form via CM/ECF, is an exact copy of the written documents filed with the Clerk of the Court.


Dated:  February 13, 2017        *s/ Timothy G. Atkinson*
                                 Timothy G. Atkinson

## <u>CERTIFICATE OF PRIVACY REDACTION</u>

Pursuant to The United States Court of Appeals for the Tenth Circuit CM/ECF User's Manual II(I)(a), I hereby certify that all required privacy redactions required by 10th Cir. R. 25.5 have been made to the foregoing document.


Dated:  February 13, 2017          *s/ Timothy G. Atkinson*        

                                    Timothy G. Atkinson

# CERTIFICATE OF VIRAL SCAN

Pursuant to The United States Court of Appeals for the Tenth Circuit CM/ECF User's Manual II(I)(c), I hereby certify that the foregoing document has been scanned for viruses with System Center Endpoint Protection and, according to that program, is free of viruses.

Dated:  February 13, 2017

*s/ Timothy G. Atkinson*

Timothy G. Atkinson

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of February, 2017, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all CM/ECF participants, resulting in service upon all counsel of record.


*s/ Timothy G. Atkinson*
Timothy G. Atkinson